IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELE RENE HART GOOLSBY

        Plaintiff

vs.                                                            Case No. 14-4019-SAC

MANAGEMENT & TRAINING
CORPORATION,

        Defendant.

MEMORANDUM AND ORDER

The plaintiff Michele Rene Hart Goolsby ("Goolsby") in February of 2014 filed an action in the District Court of Riley County, Kansas, alleging she had been employed by the defendant in Manhattan, Kansas, and was terminated in retaliation for suffering an on-the-job injury and for filing and pursuing a workers' compensation claim. (Dk. 1-2). In March, the defendant Management & Training Corporation ("Management") removed the action to federal court on the basis of diversity jurisdiction. (Dk. 1). The defendant Management also filed an answer which included, "Plaintiff's claim and cause of action is rendered invalid and legally insufficient by operation of the Transparency in Lawsuits Protection Act (K.S.A. 60-5201)." (Dk. 7, ¶ 12). On April 23, 2014, Management filed the pending motion to certify the following question of state law pursuant to K.S.A. 60-3201:

> In light of the 2012 transparency in lawsuits protection act, which provides in part, "Courts of this state shall not construe a statute to imply a private right of action in the absence of such express

language" does Kansas continue to recognize a private cause of action for workers compensation retaliation?

(Dk. 10, p. 1). The plaintiff opposes the motion, (Dk. 16), and the defendant has replied (Dk. 17). The court denies the motion to certify for the following reasons.

The Uniform Certification of Questions of Law Act, K.S.A. 60-3201, authorizes the Kansas Supreme Court to:

> answer questions of law certified to it by . . . a United States district court . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Kan. Stat. Ann. § 60–3201. In this circuit, a novel question of law governed by unsettled state law makes certification appropriate, but it is never compelled. *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 900 n.1 (10th Cir. 2005). "Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (citation omitted). "[U]nder the diversity statutes the federal courts have the duty to decide questions of state law even if difficult or uncertain." *Enfield ex rel. Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000) (internal quotation marks and citations omitted). "Certification is within the sound discretion of the federal court, and is appropriate when it will conserve the time, energy, and resources of the parties as well as of the court itself." *Hartford Ins. Co. v.*

*Cline*, 427 F.3d 715, 716–17 (10th Cir. 2005) (internal quotation marks and citations omitted). In the exercise of that discretion, the court finds that certification is not compelled here and that between the state court decisions and the general weight of authority there is sufficient guidance for resolving this particular question of state law.

In 2012, the Kansas Legislature passed the Transparency in Lawsuits Protection Act, K.S.A. 60-5201, ("TLPA") that reads:

> (a) This section shall be known as the transparency in lawsuits protection act and shall be part of and supplemental to the Kansas code of civil procedure.
> (b) It is the intent of the legislature that no statute, rule, regulations or other enactment of the state shall create a private right of action unless such right is expressly stated therein.
> (c) Any legislation enacted in this state creating a private right of action shall contain express language providing for such a right. Courts of this state shall not construe a statute to imply a private right of action in the absence of such express language.
> (d) Nothing in this act shall be construed to prevent the breach of any duty imposed by law from being used as the basis for a cause of action under any theory of recovery otherwise recognized by law, including, but limited to, theories of recovery under the law of torts or contract.

The defendant argues for an interpretation of this statute that would have the Kansas Legislature abrogating Kansas common law that establishes the tort of retaliatory discharge for exercising rights under the Kansas Workers Compensation Act ("KWCA"). From the testimony offered in support of this legislation and the observations of commentators later, the plaintiff counters that this statute appears to have been aimed at restricting the doctrine of negligence per se in Kansas and that subsection (d) is applicable here. In reply, the defendant expansively read the statute as applying to any effort to

3

imply a private cause of action including the circumstances giving rise to the tort of retaliatory discharge in violation of the public policy found in the KWCA.

The Kansas Supreme Court, in the context of a negligence per se claim, articulated and applied these general rules:

> "The question whether a liability arising from the breach of a duty prescribed by statute accrues for the benefit of an individual specially injured thereby, or whether such liability is exclusively of a public character, depends upon the nature of the duty imposed and the benefits to be derived from its performance, and the relevancy of the rule laid down by the statute to private rights. 73 Am.Jur.2d, Statutes §§ 431 and 432, pp. 529–30." *Greenlee v. Board of Clay County Comm'rs*, 241 Kan. 802, 804, 740 P.2d 606 (1987).
> The determination of whether a private right of action exists under a statute is a question of law. Kansas courts generally use a two-part test in determining whether a private right of action is created. First, the party must show that the statute was designed to protect a specific group of people rather than to protect the general public. Second, the court must review legislative history in order to determine whether a private right of action was intended. *See Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 11 P.3d 1134 (2000) (quoting *Nora H. Ringler Revocable Family Trust v. Meyer Land and Cattle Co.*, 25 Kan.App.2d 122, 126, 958 P.2d 1162, rev. denied 265 Kan. 886 [1998] ) (the *Ringler* test).

*Pullen v. West*, 278 Kan. 183, 194, 92 P.3d 584 (2004). The terms of the TLPA, in particular subsections (b) and (c), are plainly aimed at impacting how courts analyze a negligence per se claim for whether the Kansas legislature intended a private right of action to be created by statute. And specifically, the Kansas Legislature in the TLPA declared its intent to create no private right of action unless the legislation expressly creates this right.

4

There is no mistaking the overlapping language and scope of the TLPA and the judicial analysis quoted above.

In contrast, the Kansas judicial opinions discussing the tort claim of retaliatory discharge against public policy do not share similar language and analysis with the TLPA. Over the last 30 years, Kansas courts have "created" and expanded "a common-law tort for retaliatory discharge." *Campbell v. Husky Hogs*, 292 Kan. 225, 227, 255 P.3d 1 (2011). These are exceptions to the general employment-at-will doctrine for "when an employee is fired in contravention of a recognized state public policy." *Id.* (citations omitted). In *Campbell*, the Kansas Supreme Court summarized this tort, its purpose and expansion:

> To date, this court has <u>endorsed public policy exceptions</u> in four circumstances: (1) filing a claim under the Kansas Workers Compensation Act, K.S.A. 44–501 et seq ; (2) whistleblowing; (3) filing a claim under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 (2006) et seq.; and (4) exercising a public employee's First Amendment right to free speech on an issue of public concern. *Anco Constr. Co.* [*v. Freeman*], 236 Kan. [626] at 629, 693 P.2d 1183 [(1985)] (workers compensation); *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988) (whistleblowing based on good-faith reporting of coworkers or employers infraction pertaining to public health and safety); *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 561, 108 P.3d 437 (2004) (FELA); *Larson v. Ruskowitz*, 252 Kan. 963, 974–75, 850 P.2d 253 (1993) (retaliatory discharge claim when a public employee is terminated for exercising First Amendment rights to free speech on an issue of public concern); see also *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 204, 967 P.2d 295 (1998) (whistleblowing based on good-faith reporting of federal Occupational Safety and Health Act violations); *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 815, 752 P.2d 645 (1988) (employer prohibited from terminating employee because of absence caused by work-related injury and potential workers compensation claim), *overruled on other grounds by Gonzalez–Centeno v. North*

*Central Kansas Regional Juvenile Detention Facility*, 278 Kan. 427, 101 P.3d 1170 (2004); *Cox v. United Technologies*, 240 Kan. 95, Syl., 727 P.2d 456 (1986) (recognizing tort of retaliatory discharge for filing a workers compensation claim but declining to apply it under specific facts of case), *overruled on other grounds by Coleman*, 242 Kan. at 813–15, 752 P.2d 645.

*Murphy v. City of Topeka*, 6 Kan.App.2d 488, 630 P.2d 186 (1981), was the first Kansas case recognizing a cause of action for retaliatory discharge. There, plaintiff alleged he was terminated for claiming workers compensation benefits against his employer. The Workers Compensation Act did not contain an express provision making it unlawful to terminate an employee for filing a claim. In fact, <u>the *Murphy* court noted the legislature had considered amending the law to explicitly permit a retaliation claim on two occasions, but neither amendment passed</u>. 6 Kan.App.2d at 496, 630 P.2d 186. <u>Nevertheless, the Court of Appeals held a strong public policy could be implied from the statutory scheme and that policy needed protection against job-related retaliation</u>. It noted the Workers Compensation Act provided efficient remedies and protections for employees, was designed to promote the welfare of people in the state, and was the exclusive remedy available for injured workers. As such, "[t]o allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purposes of the act." 6 Kan.App.2d at 496, 630 P.2d 186. Four years later, the Court of Appeals' analysis was affirmed by this court in *Anco Constr. Co.*, 236 Kan. at 629, 693 P.2d 1183, and then reaffirmed in subsequent cases. See *Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n*, 272 Kan. 546, 560–62, 35 P.3d 892 (2001); *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 132, 815 P.2d 72 (1991); *Coleman*, 242 Kan. at 810, 752 P.2d 645; Cox, 240 Kan. at 96, 727 P.2d 456.

Almost 2 decades after *Anco Constr. Co.*, this court applied the same analysis recited in *Murphy* to recognize that a retaliatory discharge claim under FELA was necessary to protect an employee's exercise of statutory FELA rights. *Hysten*, 277 Kan. at 561, 108 P.3d 437. . . .

The case law makes it obvious that <u>Kansas courts permit the common-law tort of retaliatory discharge as a limited exception to the at-will employment doctrine when it is necessary to protect a strongly held state public policy from being undermined</u>.

6

292 Kan. at 228-29 (underlining added). And in deciding whether a state public policy exists, the Kansas Supreme Court employs this analysis:

> We have stated that courts tasked with determining whether a public policy exists are faced with three situations: (1) The legislature has clearly declared the state's public policy; (2) the legislature enacted statutory provisions from which public policy may reasonably be implied, even though it is not directly declared; and (3) the legislature has neither made a clear statement of public policy nor can it be reasonably implied. *Coleman*, 242 Kan. at 808, 752 P.2d 645. We also have held that public policy must be clearly declared by the constitution, statutory enactments, or the courts, and it must be "'so united and so definite and fixed that its existence is not subject to any substantial doubt.'" *Hysten*, 277 Kan. at 555, 108 P.3d 437 (citing *Riddle v. Wal–Mart Stores, Inc.*, 27 Kan.App.2d 79, 998 P.2d 114 [2000]). We also have acknowledged that while public policy may be determined by both the legislature and the courts, courts must respect legislative expressions when ascertaining whether a public policy exists. *Coleman*, 242 Kan. at 808, 752 P.2d 645.

292 Kan. at 230. Instead of looking at whether the Kansas Legislature intended to create a private right of action, the Kansas courts look at whether a strongly held state public policy exists such that endorsing another exception to the at-will employment doctrine "is necessary to protect" this policy "from being undermined." 292 Kan. at 229.

And most recently, the Kansas Supreme Court has spelled out the primary rationale behind the common-law retaliatory discharge tort:

> The necessity for recognizing a retaliatory discharge tort in each of these circumstances has rested on a principle of deterrence against employer reprisal for an employee's exercise of a legal right. And in those instances in which an employee is exercising a statutory right created by the legislature, we have noted that such deterrence serves not only the employee's interests but also those of the state and its people. This is because statutory rights exist only because of the legislature's determination that such a right is in the public interest.

> See Campbell, 292 Kan. at 235–36, 255 P.3d 1; Hysten, 277 Kan. at 561, 108 P.3d 437; Flenker, 266 Kan. at 202, 204, 967 P.2d 295.

*Pfeifer v. Federal Exp. Corp.*, 297 Kan. 547, 556, 304 P.3d 1226 (2013). The tort protects an employee's exercise of a statutory right that is based on state public policy. The tort does not arise from discerning a legislative intent to create a private right of action in the statute. Indeed, the Kansas courts recognized a strong public policy in the KWCA even when the Kansas Legislature had already rejected twice amendments to the KWCA that would have created a retaliation claim. *Campbell*, 292 Kan. at 228-29. In sum, the court finds that these Kansas courts in recognizing and affirming the tort of workers' compensation retaliation did not focus on whether the legislature intended to create a private of action but rather on whether the strong public policy found in the KWCA "needed protection against job-related retaliation." *Campbell*, 292 Kan. at 229; *cf. Vignery v. Ed Bozarth Chevrolet, Inc.*, 2009 WL 635128 at *2 (D. Kan. Mar. 10, 2009) ("[T]he tort of retaliatory discharge for terminating an injured employee for having filed a workers compensation claim is a creature of common law, born of Kansas' public policy," and is not statutorily created.); *Vasquez v. Target Corp.*, 2009 WL 1764525 at *2 (D. Kan. June 22, 2009) ("But even without the [Kansas Workers' Compensation] Act, a claim for retaliatory discharge would exist. As Judge Crow explained, because the Act is merely a premise for the tort does not mean that the tort arises under the Act; instead, the Act is present only indirectly as evidence of public policy."). The court finds no particularly

serious or substantial issue raised by defendants for applying subsections (b) and (c) of the TLPA here.

In this court's judgment, the issue of state law raised in the defendant's motion to certify is neither difficult nor uncertain. Existing state court and federal court precedent provides sufficient guidance for resolving the TLPA's application here. The court does not find that certification would conserve the time, energy, and resources of the parties and the court.

IT IS THEREFORE ORDERED that the defendant's motion for certification of question of law (Dk. 10) is denied.

Dated this 2nd day of July, 2014, Topeka, Kansas.


                    s/Sam A. Crow
                    Sam A. Crow, U.S. District Senior Judge